IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED
APR 13 2009
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

CHERYL ANNE ELLISON, INDIVIDUALLY )
AND AS GUARDIAN OF )
CHRISTOPHER DAVID ELLISON )
Under Durable POA, )
620 Jefferson Street, )
Swedesburg, Pennsylvania, 19405, )
)  CIVIL ACTION No. 09-cv-331
)  (Hon. William H. Yohn, Jr.)
Plaintiff, )
)
v. )
)
UNITED STATES OF AMERICA, )
)
Defendant. )
)

## AMENDED COMPLAINT

Plaintiff, Cheryl Anne Ellison, Individually and as Guardian of Christopher David Ellison, under Durable Power of Attorney ("Durable POA") (hereinafter, the Plaintiff"), files this Complaint against the United States of America ("Defendant"). Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. This case sounding in medical malpractice involves a claim for personal injury brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act (FTCA), 42 U.S.C. § 1346. Jurisdiction is based on 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1346, et seq. (FTCA litigation) and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. This matter was removed to Federal Court by the United State of America pursuant to 28 USC §§1441 and 2679 (d), see Notice of Removal attached hereto as Exhibit "A".

3. Venue is proper because the acts and omissions that form the subject matter of this action occurred in this judicial district.

## THE PARTIES

4. Plaintiff, Cheryl Anne Ellison, is an individual and adult citizen of the Commonwealth of Pennsylvania and resides at 620 Jefferson Street, Swedesburg, Montgomery County, Pennsylvania 19405, and files this Complaint as Guardian of Christopher David Ellison, under Durable Power of Attorney ("Christopher Ellison", "Christopher David Ellison", or "Mr. Ellison"), duly executed on March 19, 2001, and in her own right.

5. Plaintiff, Cheryl Anne Ellison (born 11/21/62 and presently 45 years of age), is the Wife and Guardian of Christopher David Ellison (born 12/12/57 and presently 50 years of age) under Durable POA. Mr. Ellison resides with his wife, Cheryl Anne Ellison, at 620 Jefferson Street, Swedesburg, Montgomery County, Pennsylvania 19405.

6. Defendant, United States of America d/b/a Philadelphia Veterans' Administration Medical Center ("Philadelphia VAMC") is a state-chartered hospital and health care facility. See, e.g., 36 Pa. C.S.A. § 3504.1. The Philadelphia VAMC maintains its principal place of business at 3900 Woodland Avenue, Philadelphia, Pennsylvania 19104. The Philadelphia VAMC is a state agency within the meaning of 28 U.S.C. § 2674. The Philadelphia VAMC includes Dr. Mark Abel ("Dr. Abel"), Dr. Roy Feldman ("Dr. Feldman"), Dr. Gerald Daly ("Dr. Daly"), and Dr. Joseph Foote ("Dr. Foote"), as well as all other employees, agents, ostensible agents, workmen, and servants. As more fully set forth herein, the claim asserted against this

Defendant is for professional negligence of its agents, ostensible agents, servants, and employees. As stated more fully herein, a claim for direct corporate negligence is also asserted against this Defendant.

7. In doing the acts alleged herein, Dr. Abel, Dr. Feldman, Dr. Daly, and Dr. Foote were acting as the actual, apparent and/or ostensible agents and/or employees of Defendant, Philadelphia VAMC, acting within the course and scope of their agency and/or employment with Defendant, Philadelphia VAMC.

8. All physicians, dentists, specialists, fellows, residents, nurses, technicians, and/or other professional and non-professional personnel of Defendant, Philadelphia VAMC, including but not limited to Dr. Abel, Dr. Feldman, Dr. Daly, and Dr. Foote, who were responsible for monitoring, treating, and caring for Christopher Ellison on September 11, 2007 were acting as duly authorized, actual, apparent and/or ostensible agents, servants, and employees of Defendant, Philadelphia VAMC, and acted within the scope of their employment and/or actual, apparent and/or ostensible agency with Defendant, Philadelphia VAMC. The identity of any other individuals involved in Mr. Ellison's care on September 11, 2007 cannot be ascertained from the medical records, and this information is in the exclusive custody and control of Defendant and will be the subject of discovery.

9. At all times relevant hereto, Christopher Ellison was under the medical care, treatment, and attendance of Defendant directly or through its agents, servants and/or employees including ostensible agents identified above and under their direct control or right to control.

## GENERAL ALLEGATIONS

10. On September 11, 2007, Mr. Ellison presented to the Philadelphia VAMC for a 10:00 a.m. appointment for the purpose of having his upper teeth extracted, and was seen by Dr. Abel, an oral surgery resident.

11. Mr. Ellison informed the professional staff at the Philadelphia VAMC that he had stopped taking aspirin and piroxicam for one week prior to the September 11, 2007 appointment.

12. Dr. Abel's dental summary dated September 11, 2007 indicates that he discussed the treatment plan relative to Mr. Ellison with Dr. Daly who confirmed full upper extractions as well as the extraction of teeth #18 and 28.

13. Dr. Abel and Dr. Daly did not advise Mr. Ellison that the procedure placed him at increased risk for elevated blood pressure, hypotension, vasovagal syncope, cardiopulmonary arrest, and cardioembolic event resulting in permanent, severe, devastating and neurological injury. Nor did Dr. Abel and Dr. Daly speak with Mr. Ellison about the alternatives or options to the surgery.

14. Dr. Abel's dental summary dated September 11, 2007 does not state that Mr. Ellison presented with any symptoms or complaints, including inter alia, dental caries, active periodontal disease, pain, infection, abscess, or drainage.

15. Dr. Abel's dental summary dated September 11, 2007 does not document that he performed any diagnostic work-up of Mr. Ellison, including inter alia, dental radiographs, dental charting, and/or periodontal charting.

16. On a number of occasions during Dr. Abel's procedure, Christopher Ellison complained of dizziness and light-headedness.

17. Dr. Abel's dental summary dated September 11, 2007 states that, following the administration of local anesthesia and "throughout the procedure patient exhibited symptoms of vasovagal syncope with blood pressure ranging as low a[s] 50/20."

18. Despite the repeated, continuing episodes of hypotension and vasovagal syncope, including but not limited to blood pressure levels of 50/20, Dr. Abel continued with the upper teeth extractions rather than abandon and discontinue the procedure.

19. At no point on September 11, 2007 did Dr. Daly, Dr. Feldman, or Dr. Foote, as Chief of the Dental Service, recommend to or instruct Dr. Abel that Mr. Ellison's surgical extractions be discontinued. Dr. Abel also did not abort, abandon, and/or permanently discontinue Mr. Ellison's procedure at any time on September 11, 2007.

20. Despite the repeated, continuing episodes of vasovagal syncope which occurred during the course of the procedure, Dr. Abel discharged Mr. Ellison, without assistance, and without further medical observation, and permitted him to leave the Philadelphia VAMC following the aforementioned extraction procedure.

21. At all relevant times, Dr. Feldman, Dr. Daly, and/or Dr. Foote, acted as the attending physician who controlled and/or had the right to control oral surgery resident, Dr. Abel; Dr. Feldman co-signed the September 11, 2007 dental summary note on September 14, 2007 at 09:48.

22. Dr. Feldman, Dr. Daly, and Dr. Foote controlled, concurred with, consented to, and/or acquiesced to Dr. Abel's decision to discharge Mr. Ellison, without assistance or further medical observation, and permitted him to leave the Philadelphia VAMC following the aforementioned extraction procedure.

23. Following his discharge from the Philadelphia VAMC, Mr. Ellison proceeded directly to his car where, upon information and belief, he had planned to drive himself home.

24. Thereafter, while operating his car at or near the intersection of University and Sunstein Avenues, in Philadelphia, an intersection roughly two-tenths of a mile (0.21 miles) from the Philadelphia VAMC, Mr. Ellison suffered a massive acute stroke. At approximately 1:30 pm, Mr. Ellison was subsequently found by construction workers in his car to be unconscious and slumped over his steering wheel.

25. Mr. Ellison remained unconscious and was taken by ambulance to the Hospital of the University of Pennsylvania.

26. CT revealed an extensive cerebral infarction in the area of the left middle cerebral artery.

27. Due to the passage of over three hours since Mr. Ellison was last known to be normal, Mr. Ellison was not a candidate for the administration of thrombolysis, namely TPA.

28. Mr. Ellison required hospitalization and ultimately a left hemicraniectomy due to progressive brain swelling.

29. From September 11, 2007 through October 4, 2007, Mr. Ellison endured a protracted hospitalization at the Hospital of the University of Pennsylvania after which he was transferred for 4 months, from October 4, 2007 to February 4, 2008, to Moss Rehabilitation, an acute rehabilitation and care facility. Following his admission at Moss Rehabilitation, Mr. Ellison was discharged to Manor Care, an acute care facility, where he remained until July 11, 2008.

30. Immediately following surgery, and continuing onward thereafter and to the

present, Mr. Ellison experienced and continues to suffer catastrophic and permanent neurological impairment and deficits, including <u>inter alia</u>, severe brain injury, profound global aphasia, permanent right hemiparesis, severe right-sided sensory deficits, severely altered gait and inability to walk without assistance, inability to speak, name objects, or repeat, persistent pain and discomfort, right visual field impairment, functional limitations, permanent disability and seizures.

31. Mr. Ellison now requires assistance with most aspects of daily living and can no longer care for himself and will remain dependent on others for the remainder of his life.

32. Plaintiff, Christopher D. Ellison, Jr., a retired Marine Corps who is currently 51 years old, experienced catastrophic neurological injury, including <u>inter alia</u>, permanent traumatic brain injury and permanent right-sided hemiparesis, severe pain and suffering, disfigurement, humiliation, emotional distress, loss of income and loss of future economic horizons, and loss of enjoyment of life and life's pleasures. Plaintiff's permanent catastrophic injuries, due to the negligence of the Defendant, include the aforementioned severe and permanent neurological injury.

**COUNT I - NEGLIGENCE**
**PLAINTIFF v. DEFENDANT,**
**UNITED STATES OF AMERICA d/b/a PHILADELPHIA VETERANS'**
**ADMINISTRATION MEDICAL CENTER**

33. Plaintiff incorporates by reference paragraphs 1 through 34, inclusive, as though set forth at length herein.

34. The negligence of Defendant, United States of America d/b/a Philadelphia Veterans' Administration Medical Center, by and through its employees, servants, agents,

apparent agents, ostensible agents and/or workmen, including Dr. Abel, Dr. Feldman, Dr. Daly, and Dr. Foote, includes the following:

a. Failing to appreciate and properly respond to Christopher Ellison's intra-operative hypotension and vasovagal syncope;

b. Failing to recognize the need to discontinued, abandon, and/or abort the dental procedure on September 11, 2007 following Christopher Ellison's first episode of intra-operative hypotension and vasovagal syncope;

c. Failing to recognize the need to discontinue, abandon, and/or abort the dental procedure on September 11, 2007 following Christopher Ellison's repeated episodes of intra-operative hypotension and vasovagal syncope;

d. Failing to appreciate Christopher Ellison's high risk for acute stroke following his first episode of intra-operative hypotension and vasovagal syncope and making steps to prevent same;

e. Failing to appreciate Christopher Ellison's high risk for acute stroke following his repeated episodes of intra-operative hypotension and vasovagal syncope and making steps to prevent same;

f. Failing to discontinue, abandon, and/or abort the dental procedure on September 11, 2007 following Christopher Ellison's first episode of intra-operative hypotension and vasovagal syncope;

g. Failing to discontinue, abandon, and/or abort the dental procedure on September 11, 2007 following Christopher Ellison's repeated episodes of intra-operative hypotension and vasovagal syncope;

h. Failing to order professional consult(s) in the presence of Christopher Ellison's intra-operative hypotension and vasovagal syncope;

i. Failing to order Christopher Ellison to be admitted to the hospital for monitoring and observation following Christopher Ellison's intra-operative hypotension and vasovagal syncope;

j. Failing to properly supervise resident dentists and/or resident oral surgeons;

k. Failing to ensure that Christopher Ellison was in the hands of appropriately trained and experienced dentists and/or oral surgeons;

l. Failing to properly supervise dental assistants, including inter alia, hygienists and technicians;

m. Failing to keep apprised and be aware of the condition of Christopher Ellison;

n. Failing to properly instruct the dental staff and/or dental assistants with respect to the proper management of Christopher Ellison's care including the need to discontinue, abort, and/or abandon the dental procedure following Christopher Ellison's intra-operative hypotension and vasovagal syncope;

o. Failing to properly instruct the dental staff and/or dental assistants with respect to the proper management of Christopher Ellison's care including the need for close monitoring and appropriate intervention;

p. Failing to properly instruct the dental staff and/or dental assistants with

respect to conditions under which intervention was indicated;

q. Failing to intervene in a timely manner;

r. Failing to admit Christopher Ellison to the hospital;

s. Failing to appreciate the significance of Christopher Ellison's intra-operative hypotension;

t. Failing to appreciate the significance of Christopher Ellison's vasovagal syncope;

u. Failing to appreciate the significance of Christopher Ellison's neurological symptoms including dizziness and light-headedness;

v. Failing to appreciate the significance of Christopher Ellison's repeated episodes of intra-operative hypotension, vasovagal syncope, and neurological symptoms including dizziness and light-headedness;

w. Failing to alter and/or modify initial treatment plan on September 11, 2007 to perform full upper teeth extractions;

x. Delaying in diagnosing, treating, and/or responding to Christopher Ellison's problems and symptoms, including intra-operative hypotension and vasovagal syncope;

y. Failing to take all appropriate steps so as not to increase the risk of injury and harm to Christopher Ellison in failing to discontinue, abandon, and/or abort dental procedure on September 11, 2007 following Mr. Ellison's intra-operative hypotensive events and vasovagal syncope;

z. Failing to properly recognize the foreseeable risks of injury to Christopher

Ellison in light of his clinical presentation, including inter alia, repeated episodes of dizziness and light-headedness, intra-operative hypotension and vasovagal syncope;

aa. Failing to formulate a plan of action for the proper post-operative care and monitoring of Christopher Ellison;

bb. Failing to observe Christopher Ellison post-operatively and/or failing to administer and/or order appropriate post-operative testing, in light of the aforementioned clinical symptoms, including the performance of repeat blood pressure levels and cardiac examinations, CT head scans and/or other additional testing, in a timely manner;

cc. Prematurely permitting Christopher Ellison to be discharged from medical observation and care so as to cause and/or increase the risk of injury to Christopher Ellison, in light of his aforementioned clinical presentation, including inter alia, repeated episodes of dizziness and light-headedness, intra-operative hypotension and vasovagal syncope;

dd. Failing to properly monitor and care for Christopher Ellison post-operatively so as to deprive him of the timely administration Thrombolysis, namely TPA;

ee. Delaying and/or causing a delay in the timely administration of Thrombolysis, namely TPA;

ff. Precluding Christopher Ellison from the chance of receiving the timely administration of Thrombolysis, namely TPA;

gg. Failing to recognize the relationship between the continuation of Christopher Ellison's dental procedure on September 11, 2007 and his repeated episodes of intra-operative hypotension and vasovagal syncope and persistent signs and symptoms, including dizziness and light-headedness, which caused and/or increased the risk of injury to Christopher Ellison;

hh. Failing to adhere to hospital practices, policies and procedures so as to ensure that Christopher Ellison's symptoms and condition would be promptly and accurately diagnosed and appropriately treated and/or monitored;

ii. Failing to comply with accepted standards of care, including inter alia, to discontinue, abort, and/or abandon the dental procedure on September 11, 2007 following Christopher Ellison's first and/or repeated episodes of intra-operative hypotension and vasovagal syncope, to ensure that Christopher Ellison's condition was promptly diagnosed and treated and/or monitored so as to prevent and/or decrease the risk of injury; and

jj. Failure by Dr. Daly, Dr. Feldman, and/or Dr. Foote to properly supervise and instruct Dr. Abel, an oral surgery resident, as to the urgent need to discontinue, abandon and/or abort the dental procedure on September 11, 2007 following Christopher Ellison's first and/or repeated episodes of intra-operative hypotension and vasovagal syncope.

35. The negligence of the Defendant, by and through its aforementioned agents, servants, workmen, and/or employees, as set forth above, caused the injuries and damages suffered by Plaintiff, Christopher Ellison, as set forth more fully above.

WHEREFORE, Plaintiff, Cheryl Anne Ellison, as Guardian of Christopher David Ellison, under DPA, respectfully demands judgment against Defendant individually, jointly and severally, for sums in excess of the local arbitration limits in excess of $100,000.00, exclusive of interest, prejudgment interest, and costs.

## COUNT II - LOSS OF CONSORTIUM
### PLAINTIFF, CHERYL ANNE ELLISON, INDIVIDUALLY v. DEFENDANT, UNITED STATES OF AMERICA d/b/a PHILADELPHIA VETERAN'S ADMINISTRATION MEDICAL CENTER

36. The previous paragraphs are incorporated herein by reference.

37. As the result of the negligence of the Defendant, jointly and severally, its agents, servants, employees, and ostensible agents set forth herein, Plaintiff's wife, Cheryl Anne Ellison, suffered the loss of services, society, comfort and companionship of her husband, Christopher David Ellison.

38. As the result of the negligence of the Defendant, Cheryl Anne Ellison, claims the full measure of damages allowable under Pennsylvania law for the loss to her of the consortium of her husband, Christopher David Ellison.

WHEREFORE, Plaintiff, Cheryl Anne Ellison, Individually, respectfully demands judgment against Defendant individually, jointly and severally, for sums in excess of the local

arbitration limits in excess of $100,000.00, exclusive of interest, prejudgment interest, and costs.

|  |  |
|---|---|
| | **KLINE & SPECTER** |
| | *A Professional Corporation* |
| Date: April 13, 2009 | By: _____ |
| | SHANIN SPECTER, ESQUIRE |
| | REGAN S. SAFIER, ESQUIRE |
| | Attorneys for Plaintiff |
| | 1525 Locust Street |
| | The Nineteenth Floor |
| | Philadelphia, Pennsylvania 19102 |
| | (215) 772-1000 |

## VERIFICATION

I, Regan S. Safier, counsel for the Plaintiff Cheryl Anne Ellison, Individually and as Guardian of Christopher David Ellison in the foregoing action, hereby verify that the statements made in the foregoing Amended Complaint are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 PA.C.S. §4904 relating to unsworn falsification to authorities.

Date: April 13, 2009

REGAN S. SAFIER, ESQUIRE

FILED APR 13 2009 MICHAEL E. KUNZ, Clerk By ____ Dep. Clerk

## CERTIFICATION OF SERVICE

I do hereby certify that service of Plaintiffs' Amended Complaint was made, on April 13, 2009, via US Mail, upon:

> Thomas F. Johnson
> Assistant United States Attorney
> U.S. Department of Justice
> United States Attorney, Eastern District of Pennsylvania
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA 19106-4476
> *Counsel for United States of America*

FILED
APR 13 2009
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

_____
REGAN S. SAFIER, ESQUIRE